**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KRISTINA ROLLINS KIDDY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-cv-674-GKF-TLW** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Kristina Rollins Kiddy seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **AFFIRMED**.

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical

impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if

supported by substantial evidence, the Commissioner's decision stands. <u>See</u> <u>White v. Barnhart</u>, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 34-year old female, applied for applied for Title II and Title XVI benefits on January 5, 2011. (R. 123-29, 130-33). Plaintiff alleged a disability onset date of November 10, 2010. (R. 119-21). Plaintiff claimed that she was unable to work due to limited mobility in her right ankle, back pain, arthritis, tendonitis, bursitis, and a tibia fracture. (R. 149). Plaintiff's claims for benefits were denied initially on March 28, 2011, and on reconsideration on June 17, 2011. (R. 62-75). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on April 25, 2012. (R. 36-61). The ALJ issued a decision on May 24, 2012, denying benefits and finding plaintiff not disabled because she was able to perform her past relevant work as a sales clerk. (R.15-28). The Appeals Council denied review, and plaintiff appealed. (R. 1-5, Dkt. 2).

### <u>The ALJ's Decision</u>

The ALJ found that plaintiff was insured under Title II through December 31, 2014. (R. 17). Plaintiff had not performed any substantial gainful activity since her alleged disability onset date. <u>Id.</u> The ALJ determined that plaintiff's part-time work as a clerk twenty-eight hours a week did not rise to the level of substantial gainful activity. <u>Id.</u> The ALJ also found that plaintiff had severe impairments of "back pain with radiculopathy and allied disorders." <u>Id.</u> Plaintiff's impairments, however, did not meet or medically equal a listing. (R. 18).

The ALJ summarized plaintiff's testimony as follows: Plaintiff worked part-time as a clerk. <u>Id.</u> She complained of radiculopathy in her hands, which causes her fingers to go numb and results in difficulty gripping things. <u>Id.</u> Plaintiff also complained of back pain that radiates into her legs, a "crush injury" to her right foot, arthritis in her feet and ankles, and neck pain that

radiates into her shoulders and arms. Id. As a result of her impairments, plaintiff can only do some household chores. Id. She cooks meals, but her husband and children do much of the work around the house. Id. Plaintiff stated that she could sit for fifteen to twenty minutes at a time for a total of two hours, stand ten minutes at a time for a period of eight hours, and walk in fifteen minute intervals for a period of eight hours. Id. She can lift fifteen pounds. Id. Plaintiff also has a driver's license and is able to drive. Id.

Plaintiff's medical records reveal that she fractured her right ankle in a bicycle/automobile accident in December 2002. (R. 19). Plaintiff was hospitalized for four days. Id. Years after surgery, plaintiff continued to complain of foot pain and sought treatment from her primary care physician. Id. Her treating physician, Dr. Darrell Mease, prescribed 800mg of Motrin and 300 mg of Neurontin. Id. In March 2010, plaintiff complained of "leg pain, lumbar radiculopathy, and severe degenerative arthritis of the foot." Id. The following month, plaintiff complained of leg pain. Id. Examination revealed "decreased range of motion in the right ankle in all maneuvers" and "pain with back flexion, extension and lateral flexion." Id. Dr. Mease assessed plaintiff with "acute low back pain and sciatica." Id. He prescribed Flexeril, Motrin, Prednisone, and Talwin-NX. Id. He also recommended an exercise program. Id.

The ALJ cited two sets of x-rays. Id. The first, which the ALJ did not date, shows "loose body in the talus of articular surface and multiple calcification spurs." Id. X-rays from March 2010 show screws in plaintiff's right ankle, and the accompanying report "states that the old fracture was healed and remains unchanged since August 2005." Id. The ALJ noted that plaintiff had "normal range of motion in her extremities with no pedal edema" during a January 2011 examination. (R. 19).

In March 2011, plaintiff underwent a consultative physical examination with Dr. Theron Bliss. Id. Dr. Bliss found that plaintiff had full range of motion in her lumbar and cervical spine,

hips, knees, ankles, shoulders, wrists, and fingers. Id. She had no difficulty grasping a pen. Id. Plaintiff did have difficulty with heel-toe walking due to pain in her right ankle, and she had "decreased sensation to light touch" on the right side of her L5. Id. Plaintiff had no muscle spasm or tenderness in her spine. Id. Straight leg raise test was negative. Id. Dr. Bliss did note that plaintiff was obese. Id.

In January 2012, plaintiff returned to Dr. Mease, asking him to complete social security disability paperwork for a hysterectomy. (R. 20). During his examination, Dr. Mease noted a right leg limp and decreased range of motion in plaintiff's neck, back, and right ankle. Id. Plaintiff also complained of back pain. Id. Dr. Mease assessed plaintiff with "lumbar radiculopathy" and "right degenerative arthritis of the foot (severe)." Id.

In April 2012, plaintiff complained of pain in her left hand, beginning in her ring finger and little finger and extending into her elbow. Id. Her elbow ached and felt heavy, and the pain lasted thirty to forty-five minutes. Id. Plaintiff also complained of lumbar radiculopathy. Id. Examination again revealed decreased range of motion in plaintiff's back with pain and decreased range of motion in her right ankle. Id. Plaintiff's lower lumbar and upper cervical areas also had tenderness "with trigger points and muscle spasm." Id. Dr. Mease assessed plaintiff with "joint pain, hand pain, lumbar radiculopathy, and joint pain of the ankle and foot." Id.

During that April 2012 visit, Dr. Mease completed a medical source statement. (R. 20). He opined that plaintiff could lift and carry ten pounds, stand/walk less than two hours in a workday, and sit for less than two hours in a workday. Id. Plaintiff would need to change positions at will because she could only sit or stand for ten minutes. Id. Plaintiff would also "have to lie down at unpredictable intervals during a work shift, about every 2 hours for about 5 minutes each time." Id. Dr. Mease also opined that plaintiff was limited in her ability to reach

overhead and handle objects due to her left hand and arm issues. Id. He imposed environmental restrictions and postural restrictions. Id. He stated that plaintiff would be absent from work twice a month due to her impairments. Id.

An agency physician reviewed plaintiff's records in March 2011. Id. That physician noted plaintiff's complaints regarding her right ankle but found that x-rays and the January 2011 exam were normal. (R. 20-21). The agency physician determined that plaintiff's impairment was nonsevere. (R. 21). A second agency physician reviewed plaintiff's records in June 2012[1] and reached the same conclusion. Id.

The ALJ evaluated plaintiff's credibility and found her complaints not totally credible. (R. 22). The ALJ noted that plaintiff's medical records, particularly the consultative exam, did not reveal results that would prevent plaintiff from performing any work. Id. Plaintiff's daily activities, most notably her ability to work twenty-eight hours a week as a clerk at a convenience store, contradicted her claims of disabling pain and her testimony regarding her ability to walk, sit, and stand. Id.

The ALJ also weighed all of the medical opinion evidence. He gave little weight to Dr. Mease's medical source statement because it relied on plaintiff's subjective complaints and was contradicted by the conservative course of treatment. (R. 23). The ALJ cited again to plaintiff's ability to perform part-time work, "which is much more than the residual functional capacity assessment completed by Dr. Mease." Id.

The ALJ gave great weight to the consultative examining physician's opinion and to the agency physicians' opinions because "the medical evidence and opinions are consistent with the residual functional capacity noted above." Id. With respect to the agency physicians' opinions,

---

[1] The June 2012 date is a scrivener's error. The second agency physician reviewed plaintiff's records in June 2011 as part of the reconsideration process. (R. 66).

the ALJ found that "[a]lthough the medical consultants found the claimant had a nonsevere impairment, additional treatment records were provided after the initial and reconsideration case analysis that shows the claimant has a severe impairment, but does not meet the requirements for disability." Id.

The ALJ determined that plaintiff retained the residual functional capacity to perform the full range of light work. (R. 17). Because plaintiff could perform her past relevant work as a store clerk or sales associate, the ALJ found that plaintiff was not disabled. (R. 23-24).

**The ALJ Hearing**

The ALJ held the hearing on April 25, 2012. (R. 36-61). Plaintiff's attorney reported that plaintiff had an EMG scheduled for the following Monday and advised that he would be including that report as an exhibit. (R. 38-39). The ALJ reminded plaintiff that his last day as an ALJ would be "one week from today," so plaintiff would need to submit the report before then. (R. 39). The ALJ was retiring but stated that he intended to render the decision on plaintiff's case. (R. 39, 60-61).

Plaintiff testified that she is a high school graduate with certificates in CAN and home health service. (R. 41). At the time of the hearing, plaintiff worked twenty-eight hours a week as a clerk in a convenience store. (R. 42). She last worked full-time in 2010 and earned $16,810.54 as a "sales manager" at a convenience store. Id.

Plaintiff stated that she has radiculopathy in both hands, causing her ring finger and pinky finger to go numb and her arms to feel heavy. (R. 43). She has trouble picking up small objects and she often drops things. (R. 43-44). She testified that she can use her hands twenty or thirty minutes before they go numb, but she also said that she can use her hands for eight hours a day. (R. 45). Plaintiff can lift fifteen pounds without hurting her back and her hands. Id.

Plaintiff experiences sharp pains in her back and has trouble bending and stooping. <u>Id.</u> The pain radiates into the back of both legs. (R. 46). Plaintiff said that "[m]oving makes it better. Sitting. Being able to sit down and stand up as I wish helps." <u>Id.</u> Plaintiff stated that she can sit fifteen minutes and stand/walk for ten to fifteen minutes. (R. 47, 48). Plaintiff can sit two hours total, but she can stand eight hours, even though she had some pain. <u>Id.</u> Plaintiff told the ALJ that she "can walk all day, Your Honor, but it helps if I'm able to sit at times where I can relax and, because the pain is so sharp." (R. 55).

Plaintiff has a previous crush injury to her right foot. (R. 46-47). She complained of limited mobility in her ankle and trouble bending. (R. 47). At the time of the hearing, plaintiff was only taking 800mg ibuprofen for inflammation, but she had just been prescribed medication for arthritis in her feet and ankles. (R. 48-49). She also complained of bursitis and pain in her feet. (R. 55).

Plaintiff's arm pain was caused by nerves in her back and neck. (R. 49). Plaintiff explained that she had "cervical curvature of the back and reverse cervical of the neck. My backbone, or my neckbone is backwards." <u>Id.</u> Plaintiff testified that her condition has been confirmed by an x-ray. <u>Id.</u> Plaintiff's pain had increased and manifested as a sharp pain that radiates down her back and into her shoulders. (R. 49-50). She deals with the pain by using massage at home and heat three times a week. (R. 53). Plaintiff's ability to reach overhead is limited, but she is able to do the reaching required in her part-time job. (R. 50).

Plaintiff testified that she works twenty-eight hours a week by herself. <u>Id.</u> She initially stated that she works six hour shifts but later amended that testimony to seven-hour shifts. (R. 50, 51). Plaintiff's employer provides a chair so that plaintiff can "sit down as needed." (R. 50). Plaintiff stated that she can work more than twenty-eight hours a week. (R. 52).

The ALJ then heard testimony from a vocational expert. (R. 56-60). The vocational expert listed all of plaintiff's past relevant work and identified them by DOT code, exertion level, and skill level. (R. 57-58). The ALJ then posed a hypothetical in which plaintiff could perform the full range of light work. (R. 59). The vocational expert testified that plaintiff could perform work as a convenience store clerk and as a sales associate, and he also listed other unskilled light work that plaintiff could perform, such as a counter clerk and a record clerk. Id. If the ALJ had found plaintiff's complaints credible, the vocational expert opined that plaintiff would not be able to perform any competitive work. (R. 60).

**Plaintiff's Medical Records**

The ALJ conducted a thorough review of the medical evidence. Any additional discussion of plaintiff's medical records is contained in the analysis.

## ANALYSIS

On appeal, plaintiff raises two points of error. First, plaintiff argues that the Commissioner violated the agency's procedures because the ALJ who signed the decision is not the ALJ who conducted the hearing. (Dkt. 16). Plaintiff also argues that the ALJ's decision is not supported by substantial evidence for a number of reasons: (1) the ALJ erred in weighing the medical opinions; (2) the ALJ failed to accommodate limitations caused by the impairment to plaintiff's right ankle; (3) the ALJ failed to develop the record by not obtaining the EMG report; and (4) the ALJ failed to address plaintiff's obesity.

**ALJ Signature**

Although ALJ Charles Headrick conducted the hearing in April 2012, Chief Administrative Law Judge David W. Engel signed the decision "for" ALJ Headrick. (R. 24, 30). Plaintiff argues that this procedure, without evidence that ALJ Headrick reviewed and approved the decision, violates the agency's procedures manual and requires reversal. (Dkt. 16). Plaintiff

contends that the emphasis on plaintiff's lack of credibility requires the ALJ making the decision to be the ALJ who conducted the hearing. <u>Id.</u>

The Commissioner acknowledges that the lack of explanation for the circumstances surrounding the substituted signature in this case is "less than ideal," but she argues that the error is not reversible. (Dkt. 17).

This issue appears to be an issue of first impression in the Tenth Circuit. The Social Security Administration follows the procedures listed in the Hearings, Appeals, and Litigation Law Manual ("HALLEX"), an internal agency manual that "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." <u>Bowie v. Comm'r of Soc. Sec.</u>, 539 F.3d 395 (6th Cir. 2008) (quoting HALLEX § I-1-0-1). Section I-2-8-40 addresses the procedure to be followed when the ALJ who conducted the hearing in a case is not available, due to illness, retirement, resignation, or death, to issue the decision in that case. The HALLEX states that the Chief ALJ should assign the case to a different ALJ who will review the record, "including the audio recording of the hearing." HALLEX, § I-2-8-40. If the new ALJ "is prepared to issue a less than fully favorable decision, another hearing *may* be necessary" but is not required. <u>Id.</u> (emphasis added). The HALLEX offers the following examples for evaluating the necessity of a new hearing: "if relevant vocational expert opinion was not obtained at the hearing" or if "the claimant alleges disabling pain, and the ALJ believes the claimant's credibility and demeanor could be a significant factor in deciding the case." <u>Id.</u>

Alternatively, section I-2-8-40 permits the Chief ALJ to sign the final decision "[w]hen an ALJ has approved a final decision draft but is unavailable to sign the final decision . . . if the ALJ gave the [Chief ALJ] prior affirmative written authorization to sign the decision/order for

the ALJ." Id. If the ALJ met all the requirements for having the Chief ALJ sign on his behalf, "the [Chief ALJ] would sign the decision/order '[Chief ALJ] John Doe for ALJ Jane Smith.'" Id.

The Sixth Circuit rejected an identical claim that a newly assigned ALJ had rendered an unfavorable decision that required remand. See Creech v. Comm'r of Soc. Sec., 581 Fed Appx. 519, 520-21 (6th Cir. 2014) (unpublished).[2] The Sixth Circuit found that the format of the signature indicated that the original ALJ made the decision and that the Chief ALJ simply signed the decision on his behalf. See id. The court relied on the format of the signature, which was signed by the Chief ALJ "for" the unavailable ALJ. See id. at 521. The Court also relied on a separate notice from the unavailable ALJ stating that he had made the decision. See id.

In this case, ALJ Headrick was planning to retire approximately a week after the hearing. (R. 39). ALJ Headrick indicated that he would be making the decision in plaintiff's case. Id. The ALJ's decision does not explain whether ALJ Headrick made the final decision or whether Chief ALJ Engel assigned the case to himself; however, ALJ Headrick stated at the hearing that he would be the one making the decision. Additionally, based on the format of the signature and the "Notice of Decision" letter, signed by ALJ Headrick, it appears that ALJ Headrick did make the decision and that Chief ALJ Engel simply signed the decision on ALJ Headrick's behalf.

Plaintiff also argues that Chief ALJ Engel was the newly assigned ALJ and should have held a new hearing based on the importance placed on plaintiff's credibility. (Dkt. 16). After reviewing the decision, the ALJ's credibility findings (whether they were made by ALJ Headrick or Chief ALJ Engel) do not rely heavily on plaintiff's demeanor and credibility. The ALJ addressed plaintiff's own statements regarding her activities of daily living, her ability to work part-time, her conservative course of treatment, and the medical evidence, which contradicted

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

plaintiff's claims of disabling pain. (R. 21-22). Accordingly, the ALJ decision does not indicate that a new hearing would have been necessary or that plaintiff's credibility was a significant factor. To the contrary, the ALJ relied heavily on the objective medical evidence in finding plaintiff not entirely credible. Id.

More importantly, even if plaintiff could establish that the agency failed to comply with the HALLEX requirements, both the Sixth Circuit and the district courts who have addressed the issue have still "required that the plaintiff demonstrate prejudice from the failure to follow the procedures" before reversing and remanding a case. See id. See also Beason v. Comm'r of Soc. Sec., 2014 WL 4063380 (E.D.Tenn. August 15, 2014) (unpublished); Lawrence v. Colvin, 2014 WL 640990, *4 (E.D.Ky. Feb. 18, 2014) (unpublished) (collecting cases). Plaintiff's only claim of prejudice relates to the assessment of plaintiff's credibility, which the undersigned has addressed *supra*. Therefore, plaintiff has failed to make the necessary showing.

For these reasons, the undersigned recommends a finding that this issue is moot. Alternatively, the undersigned recommends a finding of no error on this issue.

## Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence in a number of ways. (Dkt. 16). Plaintiff argues that the ALJ: (1) erred in weighing the medical opinions; (2) failed to accommodate limitations caused by the impairment to plaintiff's right ankle; (3) failed to develop the record by not obtaining the EMG report; and (4) failed to address plaintiff's obesity.

### Medical Opinions

Plaintiff contends that the ALJ's reason for giving little weight to plaintiff's treating physician's opinion – that it was based on subjective complaints – was an improper basis to reject the opinion. Id. Plaintiff also argues that the ALJ erred in giving great weight to the agency

physicians' opinions because their findings conflict with the ALJ's residual functional capacity findings. Id. Finally, plaintiff argues that the consultative examining physician's opinion, to which the ALJ also gave great weight, conflicts with the ALJ's residual functional capacity findings. Id.

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 Fed.Appx 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the

other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished).

Finally, when an ALJ does not give controlling weight to a treating physician's opinion, he "must explain in the decision the weight given to the opinion of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist. . . ." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). In this case, the ALJ did evaluate and give weight to all of the medical opinions. The question, then, is whether the ALJ properly analyzed the medical opinions.

Dr. Mease opined that plaintiff could stand and sit "with normal breaks" less than two hours in an eight-hour day. (R. 323). Dr. Mease further opined that plaintiff would have to change positions from sitting to standing to walking every ten minutes and would need to lie down twice a day for five minutes at a time. (R. 324). The ALJ gave little weight to Dr. Mease's

opinion, but contrary to plaintiff's assertion, the ALJ gave multiple reasons to support this finding.

The ALJ did find that Dr. Mease's opinion was based on plaintiff's subjective complaints. (R. 23). However, the ALJ's reasons for rejecting the opinion were based on the objective medical records. The ALJ cited Dr. Mease's treating notes, which the ALJ had previously detailed in his decision, and found that "[t]he course of treatment pursued by the doctor has not been consistent with what one would expect, if the claimant were truly disabled, as the doctor has reported." Id. The ALJ also found that Dr. Mease's findings of limitations due to pain and radiculopathy were "not consistent with the treatment notes from Dr. Mease." Id. Finally, the ALJ cited plaintiff's actual ability "to work 7 hours a day, 4 days a week, which is much more than the residual functional capacity assessment completed by Dr. Mease."[3] (R. 23).

The ALJ gave multiple, specific reasons for giving little weight to Dr. Mease's opinion. Those reasons, which are supported by the objective medical evidence and plaintiff's own testimony, rely on a number of the applicable factors and are sufficient to satisfy the rules for analyzing a treating physician's opinion.

Plaintiff argues that, in assessing Dr. Mease's opinion, the ALJ relied too heavily on plaintiff's ability to work seven hours a day, four days a week as a convenience store clerk. (Dkt. 16). Plaintiff contends that the sit/stand accommodation provided to her is consistent with Dr. Mease's opinion that plaintiff cannot sit or stand more than ten minutes at a time. Id. Plaintiff cites SSR 83-12 for the proposition that a sit/stand option is not available for unskilled work and requires a finding of disability. Id. The Commissioner's response does not address this argument.

---

[3] Dr. Mease completed the residual functional capacity assessment in April 2012, just days before the ALJ hearing, where plaintiff testified that she was working twenty-eight hours a week as a convenience store clerk. (R. 36-61, 327).

SSR 83-12 addresses situations in which a claimant's residual functional capacity to perform sedentary or light work is limited by the need to alternate sitting and standing. The advisory opinion notes that professional and managerial jobs ordinarily permit the worker to sit or stand at will but that unskilled jobs usually do not. See SSR 83-12. Many unskilled jobs "have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task." Id. The opinion advises ALJs to seek the opinion of a vocational expert "to clarify the implications for the occupational base." Id. SSR 83-12 does not require the ALJ to find a claimant disabled.

In this case, however, the ALJ's residual functional capacity findings did not include a sit/stand option. Instead, the ALJ found that plaintiff could perform the full range of light work with no limitations. The ALJ's reliance on plaintiff's current work schedule as part of his reasoning for giving little weight to Dr. Mease's opinion was based on the fact that Dr. Mease limited plaintiff to sitting or standing for two hours in an eight-hour day. (R. 23). Whatever combination of sitting and standing plaintiff employed during her shifts, it was substantially more than Dr. Mease's opinion indicated plaintiff could do. Id. The ALJ never indicated that the residual functional capacity should include a sit/stand option, and the ALJ found that the record did not support such a limitation. See Arles v. Astrue, 438 F.App'x 735, 740 (10th Cir. 2011) (holding that the ALJ was not required to consider a limitation that had "no support in the record"). See also Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (holding that a hypothetical to a vocational expert "need only reflect impairments and limitations that are borne out by the evidentiary record," i.e. the residual functional capacity findings) (citation omitted).

As previously noted, the ALJ gave specific reasons for giving little weight to Dr. Mease's opinion. To the extent plaintiff is arguing that the ALJ should have included a sit/stand option in the residual functional capacity findings, the ALJ's decision addresses that issue as well. The

ALJ relied on plaintiff's testimony that she could stand and walk up to eight hours a day and sit for two hours a day. (R. 22). By plaintiff's own testimony, she is able to perform the sitting and standing requirements of a full range of light work. For these reasons, the undersigned recommends a finding of no error on this issue.

**Limitations Related to Plaintiff's Right Ankle**

Plaintiff contends that the ALJ failed to account for any limitations stemming from plaintiff's injury to her right ankle. (Dkt. 16). Plaintiff relies on the consultative examining physician's opinion, which found that plaintiff has difficulty with heel-toe walking. Id. The Commissioner argues that the ALJ did account for any limitations in plaintiff's right ankle. (Dkt. 17). In support, the Commissioner also relies on the consultative examining physician's opinion, which found that plaintiff had full range of motion in her ankles and a normal gait. Id.

The ALJ did not find that plaintiff's right ankle injury was a severe impairment at step two, and plaintiff does not specifically challenge that finding. (R. 17). See also Seymore v. Astrue, 478 F.App'x 522, 523 (10th Cir. 2012) (unpublished) (rejecting a claimant's argument that the ALJ failed to include limitations at step four when the claimant "inexplicably failed to substantively challenge the ALJ's pivotal determination that his mental impairments" were nonsevere). Even if plaintiff had challenged the ALJ's step two determination, the Tenth Circuit has held that the failure to identify an impairment as a severe impairment at step two is harmless error if the ALJ proceeds to the next step in the sequential evaluation. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008); Hill v. Astrue, 289 F.App'x 289, 292 (10th Cir. 2008) (unpublished); Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007). Accordingly, even if plaintiff's right ankle injury met the requirement for a severe impairment at step two, because the ALJ found that plaintiff had at least one severe impairment and then proceeded to step three, the error is harmless.

The regulations also require an ALJ to "consider all of [a claimant's] medically determinable impairments . . . including [] medically determinable impairments that are not 'severe'" in assessing residual functional capacity. 20 C.F.R. § 404.1545(a)(2). The Social Security Administration requires this analysis because "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8p.

Here, the ALJ did consider plaintiff's right ankle injury. The ALJ discussed plaintiff's injury and hospitalization in 2002 and plaintiff's 2011 x-rays and examinations. (R. 19). The more recent medical records showed that plaintiff had full range of motion in her ankles, a normal gait, and a healed fracture "unchanged since August 2005." Id. The ALJ also noted that plaintiff complained of ankle pain and exhibited a right leg limp in January 2012. (R. 20). Ultimately, the ALJ determined that plaintiff could perform the full range of light work and was "capable of performing her past relevant work as a store clerk and sales associate." (R. 18, 23).

The only remaining question, then, is whether the ALJ's findings are supported by substantial evidence. Interestingly, both plaintiff and the Commissioner contend that the consultative examining physician's report supports their respective positions. (Dkt. 16, 17). Dr. Theron Bliss performed that examination in March 2011. (R. 248-53). Plaintiff reported issues with "Right ankle foot pain, back pain, nerve damage, numbness tingling in hand and feet [sic], tendonitis, arthritis, and bursitis." (R. 248). Plaintiff complained of having a limited range of motion and pain, as well as "paresthesia of the right leg, hand, and feet." Id. On examination, however, plaintiff had a normal gait and full range of motion in all areas, including her right ankle. (R. 249). The only limitation caused by plaintiff's right ankle was "difficulty with heel walking and toe walking on the right secondary to right ankle pain." Id. Dr. Bliss assessed

plaintiff with "Right ankle pain status post surgical repair. Probably posttraumatic arthritis with limited toe walking and heel walking. Surgical repair potentially causing some of paresthesia of the right leg and foot." Id.

Nothing in Dr. Bliss's report suggests that plaintiff is not capable of performing light work. The pain in plaintiff's right ankle and the paresthesia do not appear to limit her ability to walk. Although plaintiff experiences some pain, "disability requires more than the mere inability to work without pain." Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989) (citing Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988)). Plaintiff is essentially asking the Court to re-weigh the evidence by re-interpreting Dr. Bliss's opinion. See Hackett v. Barnhart, 395 F.3d at 1172 (holding that the Court may not re-weigh the evidence).

The ALJ considered the medical evidence of plaintiff's right ankle injury and determined that plaintiff retained the residual functional capacity to perform the full range of light work. The medical evidence and plaintiff's own testimony about her activities of daily living support that finding. Accordingly, the undersigned recommends a finding of no error on this issue.

**The EMG Report**

Plaintiff argues that the ALJ failed to develop the record by failing to obtain the results of the EMG testing that plaintiff underwent after the ALJ hearing. (Dkt. 16). Plaintiff argues that this test, for which plaintiff was referred to a neurologist, indicates that plaintiff's course of treatment was consistent with disability. Id. The Commissioner argues that plaintiff bore the burden to submit those test results to either the ALJ or the Appeals Council. (Dkt. 17). The Commissioner also argues that Dr. Mease's referral for an EMG is not sufficient to establish a severe impairment, much less disability. Id. Further, the medical evidence that is available indicates that plaintiff made only a single complaint of hand pain and reported that it was

"relieved with medication," all indications that plaintiff is not disabled due to hand pain or a neurological condition. Id.

Because disability proceedings are nonadversarial, "the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised.'" Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting Henrie v. U.S. Dept. of Health & Human Svcs., 13 F.3d 359, 360-61). Accordingly, the ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008) (citations omitted). However, "[s]everal preconditions inform" that duty. Wall v. Astrue, 561 F.3d 1048, 1063 (10th Cir. 2009). Among them is the principle that, in the case of represented claimants, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) (cited in Maes, 522 F.3d at 1096).

Plaintiff was scheduled for an EMG test the Monday after the ALJ hearing. (R. 38). The ALJ advised plaintiff's attorney to submit the results as soon as possible, and plaintiff's attorney stated that he would do so. (Dkt. 38-39). However, the administrative transcript indicates that plaintiff never submitted the records to the ALJ or to the Appeals Council. Under these circumstances, the ALJ was permitted to rely on plaintiff's attorney's representations and was not required to subpoena the records himself or order additional testing in order to satisfy his duty to develop the record. Accordingly, the undersigned recommends a finding of no error on this issue.

**Plaintiff's Obesity**

Finally, plaintiff argues that the ALJ failed to consider her obesity in assessing her residual functional capacity. (Dkt. 16). Plaintiff cites to the medical records that establish her obesity and contends that the ALJ was required to consider her obesity to be a medically determinable impairment that could, when considered with her other impairments, have impacted her ability to work. Id. The Commissioner contends that plaintiff never raised the issue of obesity, even when given the opportunity to do so. (Dkt. 17). The Commissioner notes that the ALJ was aware of plaintiff's height and weight. Id. The Commissioner argues that the ALJ's consideration of the entire record as a whole and his explanations for his residual functional capacity findings are sufficient to satisfy the considerations of plaintiff's obesity. (Dkt. 17).

The ALJ did not make any determinations regarding plaintiff's obesity, other than to note her height and weight as it was recorded at the time of the consultative examination in March 2011. (R. 19).

The Tenth Circuit has not determined whether an ALJ has "an affirmative legal duty to consider a claimant's obesity when it was not asserted by the claimant," but an ALJ's failure to consider a claimant's obesity can be harmless error when plaintiff fails to raise the issue. See Callicoatt v. Astrue, 296 F.App'x 700, 702 (10th Cir. 2008) (unpublished). In Callicoatt, the claimant challenged that ALJ's failure to consider her obesity for the first time at the district court level. See id. The claimant had not raised the issue with the ALJ, but she claimed that her obesity "was evident from references to her height and weight in the medical record." Id. The Tenth Circuit found that the failure to consider plaintiff's obesity was harmless error because plaintiff

> points to no evidence in the medical record (or in her hearing testimony for that matter), showing that her obesity exacerbated her other impairments. Without some evidence that her obesity was relevant to her other alleged impairments

> during the relevant time frame, the ALJ was not required to consider the claimant's obesity.

Id. In such a situation, the Tenth Circuit places the burden on the plaintiff. See id.

In this case, plaintiff fails to cite any evidence that her obesity impacted her back pain and radiculopathy. She claims only that the ALJ was required to notice her obesity and analyze its impact on her other impairments. (Dkt. 16). This argument contradicts the Tenth Circuit's holding in Callicoatt. Accordingly, the undersigned recommends a finding of no error on this issue.

## Substantial Gainful Activity

Although the undersigned recommends affirming the ALJ's decision, in the event that the District Court finds that remand is necessary, the undersigned has opted to raise an issue *sua sponte* for the District Court's consideration. At step one of the five-step analysis, the claimant must demonstrate "that he is not presently engaged in substantial gainful activity." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 1988) (citation omitted). The regulations provide a formula for calculating the monthly income necessary to establish substantial gainful activity. See 20 C.F.R § 404.1574. According to the Social Security Administration, in 2012, at the time of the ALJ's decision and at the time plaintiff testified that she was working part-time, that amount was $1,010.00. See http://www.socialsecurity.gov/oact/cola/sga.html (last visited January 6, 2015).

Although the regulations require the ALJ to determine substantial gainful activity based on income, in this case, the ALJ found that plaintiff was not engaged in substantial gainful activity because she only worked twenty-eight hours a week. (R. 17). Plaintiff testified that twenty-eight hours was her normal shift, but that she sometimes worked more than twenty-eight hours a week. (R. 51-52). At a wage of $7.50 per hour and a varying schedule, it is possible that

plaintiff could meet the monthly wage necessary to establish substantial gainful activity. The administrative record does not contain any annual wage information after 2010, but plaintiff's testimony establishes that she was working in 2012. (R. 51-52, 136). Additionally, plaintiff's wage report indicates that she made $1,402 in the second quarter of 2011 and was hired at Kritika, Inc. in Jay, Oklahoma, in May 2011. (R. 143).

Should the District Court determine that the case should be remanded to the ALJ, the undersigned recommends that the District Court direct the ALJ to conduct a proper analysis of plaintiff's part-time work to determine whether it meets the requirements for substantial gainful activity.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 18, 2015.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73

F.3d 1057, 1059 (10th Cir. 1996) (quoting <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 3rd day of February, 2015.

_T. Lane Wilson_____
T. Lane Wilson
United States Magistrate Judge