# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

KRISTINA M. ROLLINS KIDDY, )
)
Plaintiff, )
)
v. ) Case No. 13-CV-674-GKF-TLW
)
CAROLYN W. COLVIN, Acting )
Commissioner, Social Security )
Administration, )
)
Defendant. )

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge T. Lane Wilson on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #19] and the Objections thereto filed by plaintiff, Kristina M. Rollins Kiddy ("Rollins Kiddy"). [Dkt. #20]. The Magistrate Judge recommended the Commissioner's decision be affirmed. Rollins Kiddy objects to the Magistrate Judge's Report and Recommendation, arguing (1) the signature block suggests the ALJ who presided at the hearing did not prepare the decision, (2) the ALJ inappropriately discounted the opinion of Rollins Kiddy's treating source, (3) the ALJ failed to account fully for Rollins Kiddy's ankle injury impairment in the RFC, (4) the ALJ failed to account fully for Rollins Kiddy's obesity in the RFC, and (5) the Magistrate Judge included improper *post hoc* arguments regarding Rollins Kiddy's record of substantial gainful activity. For the reasons below, the court adopts the Magistrate Judge's recommendation and affirms the Commissioner's decision denying benefits.

## I. Procedural History

Rollins Kiddy filed her applications for supplemental security income and disability benefits on January 5, 2011. [Dkt. #15-5, pp. 2-12]. The Social Security Administration denied the applications initially and on reconsideration. [Dkt. #15-3; Dkt. #15-4, pp. 2-9]. ALJ Charles Headrick held an administrative hearing on April 25, 2012. [Dkt. #15-2, p. 37 *et seq.*]. By decision dated May 24, 2012, the ALJ found that Rollins Kiddy was not disabled. [*Id*. at 13-29]. On August 21, 2013, the Appeals Council denied review. [*Id*. at 2-5]. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a *de novo* review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health &*

*Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

### III. The Signature Block

Rollins Kiddy's first objection relates to the signature block on the ALJ's decision, which reads in relevant part:

/s/ *David W. Engel*
<u>for Charles Headrick        </u>
Charles Headrick
Administrative Law Judge

To Rollins Kiddy, this signature block suggests that Engel, another ALJ, prepared the decision instead of ALJ Headrick. [*See* Dkt. #20, pp. 1-3]. Rollins Kiddy cites internal SSI rules that govern situations in which the ALJ who presided over a hearing is unavailable to issue the decision. *See* Commissioner's Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-8-40. Rollins Kiddy argues the case should be reversed due to SSI's failure to follow these rules. [Dkt. #28, p. 3].

There is no basis for believing that ALJ Headrick did not make the decision in this case. The signature block suggests no more than it clearly states: that ALJ Engel *signed* ALJ Headrick's decision on behalf of his colleague, not that ALJ Engel prepared the decision. No other evidence has been presented that ALJ Headrick did not prepare the decision, making the HALLEX provisions Rollins Kiddy cites irrelevant. Rollins Kiddy's objection is overruled.

### IV. Weight Shown Opinions of Treating Source

Rollins Kiddy argues the ALJ erred in giving little weight to the opinions of her treating source, Dr. Mease. Specifically, Rollins Kiddy argues the ALJ improperly dismissed Dr.

Mease's opinions because the ALJ found those opinions to be based on Rollins Kiddy's subjective statements. Rollins Kiddy misreads the ALJ's explanation. While the ALJ noted Dr. Mease "apparently relied quite heavily on" Rollins Kiddy's subjective statements, [*See* Dkt. #15-2, p. 24], in the next sentence, the ALJ goes on to explain that the subjective statements are not consistent with the rest of the medical evidence in the record. [*Id.*] Specifically, the ALJ found Dr. Mease's opinion on Rollins Kiddy's work-related activity [Dkt. #15-7, p. 128 *et seq.*] was inconsistent with the rest of the record, including Dr. Mease's treatment notes [Dkt. #15-7, pp. 29-33, 61-106, 124-27]. It was the inconsistency of Dr. Mease's opinion with the rest of the medical evidence that led the ALJ to give it little weight, not its reliance on subjective statements *per se*.

Such inconsistency is a proper basis for determining a treating source's opinion is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Inconsistency between a treating source's opinion and the rest of the medical record is also a proper consideration at the next step of the analysis, *i.e.*, determining how much weight to give that opinion. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ also invokes two other factors when assigning "little weight" to Dr. Mease's opinion, including the degree to which the opinion is supported by relevant evidence, and other factors brought to the ALJ's attention. *See id.*; [Dkt. 15-2, p. 24]. Specifically, the ALJ noted Rollins Kiddy's course of treatment has not been consistent with a disability. Rollins Kiddy objects, arguing that she has had ankle surgery and various other treatments for her right ankle. [Dkt. #20, p. 4]. And yet these treatments have been of limited duration, not necessarily indicative of an on-going impairment that could lead to a finding of disability. Furthermore, contrary to Rollins Kiddy's claim that she "followed all other measures recommended" for her ankle pain, the record shows that she did not wear a

4

prescribed ankle brace "at all." [Dkt. #15-7, p. 32]. The ALJ's determination that Dr. Mease's opinion is not consistent with the rest of the record is supported by substantial evidence.

The ALJ also considered one other factor while weighing Dr. Mease's opinion. Rollins Kiddy works part-time as a convenience store clerk. According to her own testimony, Rollins Kiddy works seven hours a day. This fact is not consistent with Dr. Mease's opinion that Rollins Kiddy can sit for no more than two hours a day, and can walk or stand for no more than two hours a day, even with normal breaks. [Dkt. #15-7, p. 128]. Rollins Kiddy argues that because the ALJ does not know how she divides her time between sitting and standing during a seven-hour shift, he is merely speculating that her work routine does not comply with the limitations in Dr. Mease's opinion. This argument is not persuasive, as it presumes an unlikely interpretation of Dr. Mease's opinion. Dr. Mease's opinion states that Rollins Kiddy is limited to sitting for no more than two hours in a given work day, not two hours *at a time*. The same is true of Dr. Mease's limitation on walking or standing. Thus, no matter how the day is divided, Dr. Mease's opinion is consistent with no more than a four-hour work day, and is not consistent with the seven-hour work day of which Rollins Kiddy testified.

The ALJ's conclusions that Dr. Mease's opinion was not entitled to controlling weight, but rather "little weight" are supported by substantial evidence. Rollins Kiddy's objection is overruled.

### V. Consideration of Ankle Limitations

Rollins Kiddy argues the ALJ, in formulating the RFC, did not consider some of the limitations on her right ankle. Specifically, Rollins Kiddy claims the ALJ did not consider the peripheral neuropathy and paresthesia noted in Dr. Bliss's examination notes from March 12, 2011. [Dkt. #15-7, p. 53]. In fact, the ALJ's discussion of Rollins Kiddy's RFC considers the

same limitations, albeit in slightly different medical terminology. The ALJ noted Rollins Kiddy experienced "hypoesthesia in the right S1 and S2 distribution." [Dkt. #15-2, p. 20]. Hypoesthesia refers to "[d]ecreased sensitivity of the skin." "Hypoesthesia," Vol. 3-H, J.E. Schmidt, M.D., *Attorney's Dictionary of Medicine* (Matthew Bender 2014) (hereinafter "Schmidt"). The S1 and S2 nerves cover the outside of the foot and the toes. "Dermatome," *Dorland's Illustrated Medical Dictionary* (Saunders 28th ed.). In addition, the ALJ noted Rollins Kiddy "was affected by decreased sensation of . . . both feet . . . ." [*Id.* at p. 21]. Peripheral neuropathy is a disease in peripheral nerves, like those of the feet, "marked by partial or complete loss of sensation." "Peripheral neuropathy," Vol. 4-P, Schmidt. Peripheral neuropathy is a common cause of paresthesia—tingling or burning in the skin, as when a limb "falls asleep"—and of hypoesthesia—decreased sensation in the skin. *See* "Peripheral Neuropathy," *The Merck Manual of Diagnosis and Therapy*, 1491, (Beers & Berkow, eds. 1999).

In other words, the ALJ clearly considered the neurological problems in Rollins Kiddy's right foot when formulating the RFC, even if he did not use the specific terms paresthesia and peripheral neuropathy. Because the ALJ considered these limitations, any further inquiry would constitute a re-weighing of the evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Such analysis would be improper here because, as the Magistrate Judge notes, there is substantial evidence supporting the ALJ's RFC as it relates to the functioning of Rollins Kiddy's ankles. [Dkt. #19, p. 19]. Rollins Kiddy's objection is overruled.

**VI. Consideration of Obesity**

Rollins Kiddy argues the ALJ failed properly to consider her obesity when formulating the RFC. The RFC contains no reference to obesity. Rollins Kiddy did not raise the issue of her obesity before the ALJ or otherwise in the administrative proceedings. And yet Rollins Kiddy

6

argues the record contains evidence of her obesity. However, "[w]ithout some evidence that her obesity was relevant to her other impairments . . . , the ALJ was not required to consider the claimant's obesity." *Callicoatt v. Astrue*, 296 F.App'x 700, 702 (10th Cir. 2008) (unpublished).

Rollins Kiddy argues the medical evidence shows limitations based on her obesity. However, the medical evidence cited by Rollins Kiddy merely shows that Dr. Mease noted Rollins Kiddy was "moderately obese" at the beginning of each of six visits. [Dkt. #15-7, pp. 66, 71, 75, 79, 83, 87, 98]. On two occasions, Dr. Mease recommended that Rollins Kiddy lose weight and/or exercise. [Dkt. #15-7, pp. 71-72, 126]. Only once does Dr. Mease discuss Rollins Kiddy's obesity in connection with another medical condition, "[hyperandrogenic] chronic anovulation," a condition that can cause polycystic ovaries in women. [Dkt. #15-7, pp. 71-72 (noting that weight loss is key to treating hyperandrogenic chronic anovulation)]. But this ovarian condition is not one of Rollins Kiddy's impairments as determined by the ALJ, nor did Rollins Kiddy mention it in her application for disability or in her testimony at the hearing. [Dkt. #15-2, p. 18; Dkt. #15-3, pp. 2-3, 5-6; Dkt. #15-4, p. 13; Dkt. #15-2. Pp. 41-57]. Therefore, the record contains no evidence that Rollins Kiddy's obesity is relevant to her other impairments. Accordingly, the ALJ was not required to consider her obesity. Rollins Kiddy's objection is overruled.

### VII. Substantial Gainful Activity

Rollins Kiddy also objects to the Magistrate Judge's observations regarding the ALJ's conclusion that Rollins Kiddy has not engaged in substantial gainful activity. The ALJ concluded Rollins Kiddy had not engaged in substantial gainful activity because she only works twenty-eight hours a week. The Magistrate Judge points out that the proper measure of

7

substantial gainful activity is income, not hours worked, and that Rollins Kiddy's income may qualify as substantial gainful activity in spite of her reduced work hours.

Rollins Kiddy characterizes the Magistrate Judge's observations as an improper attempt at *post hoc* rationalization in support of the ALJ's decision. Rollins Kiddy misreads the Magistrate Judge's report. The Magistrate Judge does not offer these observations as additional grounds for affirming the ALJ's decision, but rather as an additional topic for the ALJ to address "in the event that the District Court finds that remand is necessary" based on Rollins Kiddy's other objections. [Dkt. #19, p. 22]. Because the court adopts the Magistrate Judge's recommendation to affirm the denial of benefits, neither the ALJ nor this court need review the ALJ's substantial gainful activity analysis. Rollins Kiddy's objection is overruled.

## VIII. Conclusion

For the reasons set forth above, Rollins Kiddy's Objections to the Magistrate Judge's Report and Recommendation [Dkt. #20] are overruled, the Magistrate Judge's Report and Recommendation [Dkt. #19] is adopted, and the decision of the Commissioner is affirmed.

ENTERED this 3rd day of March, 2015.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT